**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br> *Plaintiff*, | )<br>)<br>) |
| v. | )  CASE NO. 3:23-cv-00900 (KAD) |
| | ) |
| CONTENTS OF ROBINHOOD<br>ACCOUNT ENDING IN 3368,<br>*USER ID 233dacb2-481d-4518-8228-*<br>*9ce00d0ce42a,*<br> *Defendant*. | )<br>)<br>)<br>)  October 29, 2025<br>)<br>) |
| | ) |
| CLAIMANT: HAMED GHORBANI-<br>MOGHADDAM | )<br>) |

**MEMORANDUM OF DECISION**
**RE: Motion for Default Judgment (ECF No. 31)**

Kari A. Dooley, United States District Judge:

Plaintiff United States of America (the "Government") brings this action against the Contents of Robinhood Account Ending in 3368, User ID 233dacb2-481d-4518-8228-9ce00d0ce42a (the "Robinhood Account"), seeking forfeiture of property derived from unlawful activity following a healthcare fraud investigation conducted by the Government. The Government seeks a default judgment as against claimant Hamed Ghorbani-Moghaddam ("Ghorbani"), essentially extinguishing any right, title, or interest he may have to the Robinhood Account. For the reasons below, the Court grants the motion for default judgment.

**Facts and Procedural History**

The following facts, which are accepted as true because of the entry of default, *A&B Alternative Mktg. Inc. v. Int'l Quality Fruit Inc.*, 35 F.4th 913, 916 n.4 (2d Cir. 2022), are taken from the Government's Complaint, ECF No. 1, and its Motion for Default Judgment, ECF No. 31.

1

This civil forfeiture action arises from a healthcare fraud scheme involving the unlawful payment of kickbacks to recruit Medicaid patients, and the subsequent billing of Medicaid for unnecessary or non-rendered dental services. Compl., ECF No. 1, ¶¶ 24–25. The scheme centered around ASAPS LLC ("ASAPS"), a company that was paid by certain Connecticut healthcare providers to recruit Medicaid-eligible patients to obtain medical services in violation of federal law. *Id.*

ASAPS was established in January 2016 and operated a patient recruitment service for dental and medical providers throughout Connecticut. *Id.* ¶¶ 28–29. Despite providing transportation and recruitment services related to Medicaid patients, ASAPS was never approved by the Connecticut Medical Assistance Program to provide any Medicaid services, including Medicaid Non-Emergency Medical Transportation. *Id.* ¶ 29. From January 2016 through November 2022, ASAPS paid approximately 118 different people to work as marketers, patient recruiters, drivers, or office staff. *Id.* ¶ 30. ASAPS workers recruited patients using various methods, including via social media, and they induced patients to use their client dental providers by paying the patients cash and providing free transportation. *Id.* ¶ 26. Public social media posts by ASAPS workers repeatedly advertised the exchange of cash in exchange for attendance at client dental providers. *Id.* ¶¶ 46–56 (collecting screenshots of social media posts).

Dr. Hamed Ghorbani-Moghaddam, DDS is a dentist and the owner of MGM Family Dental LLC ("MGM"). *Id.* ¶¶ 27, 58. In 2017, Ghorbani entered into an arrangement with ASAPS under which ASAPS would identify, recruit, and transport Medicaid-eligible patients to Ghorbani's dental office in exchange for a per-patient fee. *Id.* ¶ 67. From October 2017 through May 2021, Ghorbani paid ASAPS a total of $517,400, either by check or via bank transfer from bank accounts on which Ghorbani was a signatory. *Id.* ¶ 68. Ghorbani generally paid ASAPS on a percentage

2

basis, based on how much Medicaid reimbursed Ghorbani for each patient and whether the patient required dental work. *Id.* ¶ 85. This resulted in Ghorbani paying, on average, around 30% of his reimbursement from Medicaid. *Id.* ¶ 92.

Between August 2015 and September 2021, Ghorbani—through both MGM and his prior practice, Ghorbani Mohammadi Dental PC ("GMD")—billed Medicaid for a combined 6,722 patients and 11,068 appointments, and they were paid approximately $4.03 million for these services. *Id.* ¶ 88. Of those 6,722 patients, 4,797 were referred by ASAPS. *Id.* For those 4,797 patients, MGM and GMD billed Medicaid for 7,724 appointments, for which they were reimbursed in the approximate amount of $3 million, representing 75% percent of the total amount that Medicaid paid to MGM in reimbursements. *Id.* ¶ 89.

The Government's investigation also revealed that Ghorbani billed Medicaid for services he did not actually render. *See id.* ¶¶ 84–85. For example, Ghorbani billed Medicaid for extensive dental work on children in one family, including over ten fillings for children as young as four years old, despite patient interviews confirming that children typically received no more than five fillings at a time and appointments lasted only 15 to 30 minutes per child. *Id.* ¶¶ 75, 84.

Ghorbani opened the Robinhood Account on May 7, 2020. *Id.* ¶ 91. Between April 2018 through March 2023, Medicaid paid Ghorbani and/or MGM a total of approximately $5,997,034 to a Bank of America account ending in 2264 (the "2264 Account"), which belonged to Ghorbani and MGM. *Id.* ¶¶ 94–95. Ghorbani and/or MGM transferred approximately $1,032,681.02 of those Medicaid reimbursements from the 2264 Account to the Robinhood Account through a series of transfers between November 2020 and December 2021. *Id.* ¶ 96. Ghorbani and/or MGM also made additional transfers between the 2264 Account and another Bank of America account ending in 3405 (the "3405 Account"), which also belonged to Ghorbani and MGM. *Id.* ¶ 97. Between

3

December 2021 and July 2023, approximately $1,937,893.93 was transferred from the 2264 Account to the 3405 Account. *Id.* Approximately $625,369.43 was then transferred from the 3405 Account to the Robinhood Account through at least November 2022. *Id.* ¶ 98.

The Government commenced this action on July 6, 2023. ECF No. 1. Shortly thereafter, Ghorbani appeared through counsel as a claimant to the Robinhood Account. ECF No. 9. Initially, the parties jointly moved to stay this case because Ghorbani was the subject of an ongoing related criminal investigation. ECF No. 11. The Court granted the joint motion to stay on August 25, 2023. ECF No. 12. However, subsequent events revealed that Ghorbani left the United States on or about May 11, 2023, and traveled to Iran, where he has remained ever since despite having legal obligations in the United States. Mot. to Set Aside Stay, ECF No. 15, at 2–3. Ghorbani left the United States after he was served by the Government with a target letter on April 6, 2023, making him aware of the ongoing federal criminal investigation into his conduct. *Id.* at 1–2. A grand jury returned an indictment against Ghorbani on March 7, 2024, and, as a result, there is currently an outstanding warrant for his arrest. *Id.* at 3; *see generally United States v. Ghorbani-Moghaddam*, No. 3:24-cr-00056 (VAB). The Government subsequently moved to lift the stay in this case. Mot. to Set Aside Stay at 3.

While the Government's motion to set aside the stay was pending, Ghorbani's attorney filed a motion to withdraw as counsel on December 23, 2024, citing his imminent departure from private practice. Mot. to Withdraw, ECF No. 23. Counsel certified that he had timely notified Ghorbani of this development and the need to retain new counsel. *Id.* ¶¶ 1–3. On January 2, 2025, the Court granted the motion to withdraw. ECF No. 24. The Court advised Ghorbani that the failure to secure successor counsel or file a *pro se* appearance may result in a default being entered against him. ECF No. 24. The Court then extended the previously issued stay until January 23,

4

2025, to allow Ghorbani to either appear *pro se* or secure successor counsel. ECF No. 24. On January 3, 2025, Ghorbani's former counsel certified that he had provided Ghorbani with the Court's Order via "an established, previously employed means of transmission." ECF No. 25. To date, Ghorbani has failed to appear *pro se* or through successor counsel.

On January 29, 2025, the Court granted the Government's Motion to Set Aside the Stay.[1] ECF No. 27. The Court found that Ghorbani's failure to appear in this action either *pro se* or through successor counsel, despite the Court's order, "demonstrates his intent to abandon his claims regarding the Robinhood Account at issue." ECF No. 27.

The Government previously filed its Declaration of Publication, detailing that a "Notice of Civil Forfeiture was posted on an official government internet site (www.forfeiture.gov) for at least 30 consecutive days . . . as required by Rule G(a)(iv)(C) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions." Decl. of Pub., ECF No. 14, at 1. On April 16, 2025, following Ghorbani's continued failure to appear, the Court granted the Government's Motion for Default Entry against Ghorbani pursuant to Federal Rule of Civil Procedure 55(a). ECF No. 29. On April 22, 2025, the Government filed the instant motion for default judgment. Mot. for Default J., ECF No. 31.

**Standard of Review**

Rule 55 of the Federal Rules of Civil Procedure governs motions for default judgment. *See* Fed. R. Civ. P. 55. The two-step process requires first that "Plaintiff obtain an entry of default under Rule 55(a), by showing that the defaulting party 'has failed to plead or otherwise defend.' The second step is to seek a default judgment under Rule 55(b)." *Hernandez v. Apple Auto*

---

[1] Before he withdrew as counsel, and simultaneously with the filing of his motion to withdraw, Ghorbani's counsel filed an opposition to the motion to set aside the stay, ECF No. 22, which the Court considered in its analysis of the Government's motion. Thus, Ghorbani's interests were represented in the Court's decision whether to set aside the stay.

*Wholesalers of Waterbury LLC*, 460 F. Supp. 3d 164, 176 (D. Conn. 2020) (quoting *Priestley v. Headminder Inc.*, 647 F.3d 497, 504 (2d Cir. 2011)) (quotation marks and internal citations omitted).

"It is well established that a party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Cablevision of S. Conn. Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001) (quoting *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). "Courts may grant default judgment only if the defendant was properly served and the court has personal jurisdiction." *Trustees of I.U.O.E. Loc. 478 Annuity Fund v. Nat'l Shoring, LLC*, No. 3:22-cv-1200 (MPS), 2024 WL 2976713, at *2 (D. Conn. June 13, 2024).

**Discussion**

For the reasons explained below, the Court concludes that the Government has met its burden to secure a default judgment as against Claimant Ghorbani.

*In rem* forfeiture actions are generally governed by Rule G of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims (the "Forfeiture Rules"). *See United States v. Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014). Both the Federal Rules of Civil Procedure and the Forfeiture Rules require notice to be given to claimants of property subject to civil forfeiture, as provided under Rule G. Because Ghorbani has been identified as a "known potential claimant,"[2] the Government must comply with specific notice obligations applicable to him. Under Rule G(4)(b)(iii), the Government must provide notice "by means reasonably calculated to reach the potential claimant." Notice may be provided to the claimant directly or to their attorney

---

[2] A "known potential claimant" under the Forfeiture Rules is defined as "any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim." Fed. R. Supp. Adm. & Maritime Claims G(4)(b)(i).

representing them in a related criminal case, administrative proceeding, or civil forfeiture action. Fed. R. Supp. Adm. & Maritime Claims G(4)(b)(iii)(B). The Government has complied with these provisions: on July 7, 2023, the Government mailed the verified complaint for forfeiture and accompanying documents to Ghorbani's attorney in this civil forfeiture action. Mot. for Default J. ¶ 3. And Ghorbani appeared through counsel in this action on August 7, 2023.[3] ECF No. 9.

Finally, regarding the circumstances surrounding Ghorbani's default, the record establishes that Ghorbani voluntarily left the United States on May 11, 2023, after being served with a target letter informing him of the federal criminal investigation on April 6, 2023. Mot. to Set Aside Stay, ECF No. 15, at 1–2. Ghorbani's decision to travel to Iran as a dual citizen, knowing the potential complications this could create for his legal obligations in the United States, was a voluntary assumption of risk that cannot excuse his failure to participate in these proceedings. *Id.* at 3–4. And in lifting the stay, this Court noted that Ghorbani's failure to appear either *pro se* or through successor counsel "demonstrates his intent to abandon his claims regarding the Robinhood Account at issue." ECF No. 27 (citing *United States v. All Funds on Deposit at Citigroup Smith Barney Acct. No. 600-00338*, 617 F. Supp. 2d 103, 128 (E.D.N.Y. 2007)).

Accordingly, the Court concludes that the Government has satisfied its notice and service obligations under Rule G of the Forfeiture Rules and Federal Rule of Civil Procedure 4(n)(1). Ghorbani appeared but thereafter defaulted, and the Government is entitled to a default judgment against Ghorbani. All right, title, or interest Ghorbani may have held in the Robinhood Account is thereby extinguished.

---

[3] Because Ghorbani previously appeared in this action, he clearly had actual notice of the forfeiture, thereby also complying with Rule G(4)(b)(v). *See* Fed. R. Supp. Adm. & Maritime Claims G(4)(b)(v) ("A potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice.").

**Conclusion**

For the foregoing reasons, the Government's Motion for Default Judgment against Claimant Hamed Ghorbani-Moghaddam (ECF No. 31) is GRANTED.

**SO ORDERED** at Bridgeport, Connecticut, this 29th day of October, 2025.

_/s/ Kari A. Dooley_
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

8